EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEROME CANADY, M.D. *et al.*,            :
                                          :
              Plaintiffs,                 :       Civil Action No.:    96-2012 (RMU)
                                          :
         v.                               :       Document Nos.:      48, 189
                                          :
ERBE ELEKTROMEDIZIN GmbH *et al.*,        :
              Defendants.                 :

## MEMORANDUM OPINION

### DENYING THE PLAINTIFFS' MOTION TO STRIKE AND GRANTING THE DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

This matter comes before the court as the final battle in an enduring litigation war. At issue in this patent case is whether evidence that the plaintiffs discovered after the court granted summary judgment to the defendants requires the court to modify its previous decision. Also at issue is the plaintiffs' motion to strike two declarations submitted by the defendants in support of their renewed motion for summary judgment. Because the Grund declaration is properly admitted by the defendants, the court denies the plaintiffs' motion to strike. Because the Waye declaration is only relevant to rebut the plaintiffs' improper admission of an educational videotape, which this court holds is not newly discovered evidence, the plaintiffs' motion to strike the Waye declaration is denied as moot. Because this newly discovered evidence does not alter this court's prior granting of summary judgment, the defendants' renewed motion for summary judgment is granted.

## II.    BACKGROUND

The instant dispute centers on U.S. Patent Number 5,207,675 ("the '675 patent"), which

describes an electrosurgical device capable of facilitating blood coagulation during surgical

procedures. *Canady v. Erbe Elektronedizin GmbH*, 271 F. Supp. 2d 64, 65-66 (D.D.C. 2002).

The plaintiffs, Jerome Canady and Argon Electro-Surgical Corporation (collectively, "Canady"

or the "plaintiffs") own the '675 patent.  The defendants, a German corporation and a related

American corporation (collectively, "Erbe" or the "defendants") manufacture and sell several

models of a similar electrosurgical device known as an argon plasma coagulation ("APC") probe.

*Id*. at 66.

The plaintiffs filed their complaint on August 29, 1996, seeking a declaratory judgment

that Erbe's APC probe infringes on the claims of the '675 patent.  Mem. Op. (dated Mar. 5,

2004) at 3.  On August 5, 1997, the defendants filed counterclaims for non-infringement and

invalidity.  *Id*.  On February 27, 1998, the defendants moved for summary judgment on their

counterclaims, claiming that (1) the '675 patent is invalid, and (2) in any event, Erbe's APC

probes do not infringe the '675 patent.  Defs.' Mot. for Summ. J. at 1-4.  On September 10, 1998,

the court denied the defendants' motion for summary judgment on invalidity but granted the

defendants' motion for summary judgment on non-infringement, holding that the APC probes did

not infringe on the '675 patent.  *Canady v. Erbe Elektromedizin GmbH,* 20 F. Supp. 2d 54

(D.D.C. 1998).  The plaintiffs appealed from the grant of summary judgment of non-

infringement to the Federal Circuit.[1] The Federal Circuit affirmed this court's decision without opinion. *Canady v. Erbe Elektromedizin GmbH*, 194 F.3d 1335 (Fed. Cir. 1999).

Subsequently, the plaintiffs filed a Federal Rule of Civil Procedure 60(b) motion, seeking relief from the court's grant of summary judgment. The plaintiffs alleged that the defendants wrongfully withheld documents[2] that could have supplied a meritorious response to the defendants' motion for summary judgment of non-infringement. On March 31, 2000, the court granted the plaintiffs' Rule 60(b) motion, reasoning that "the information not disclosed by [the defendants] is material to the infringement issue and might have enabled [the plaintiffs] to withstand [the defendants'] motion for summary judgment of non-infringement." Mem. Op. (dated Mar. 31, 2000) at 3. The court vacated the portion of the September 10, 1998 order that granted summary judgment of non-infringement to the defendants. *Id.*

On June 21, 2000, the defendants requested that the Patent Trademark Office ("PTO") reexamine the '675 patent. Mem. Op. (dated Mar. 5, 2004) at 6. The PTO granted the defendants' request on September 12, 2000. *Id.* The court stayed the current litigation pending

---

[1]    The plaintiffs filed their notice of appeal on October 8, 1998, challenging only the court's award of summary judgment of non-infringement. The defendants did not appeal from the portion of this court's order denying its motion for summary judgment of invalidity. *See generally* Mem. Op. (dated Mar. 31, 2000).

[2]    The allegedly withheld documents were:
(I)    The U.S. Patent No. 5,720,745 ("the Farin *et al.* patent") and its file history;
(ii)   Farin *et al.*, TECHNOLOGY OF ARGON PLASMA COAGULATION WITH PARTICULAR REGARD TO ENDOSCOPIC APPLICATIONS, 2 End. Surg. 1994, 71-77 ("Farin *et al.* 1994 Article");
(iii)  Grund *et al.*, ENDOSCOPIC ARGON PLASMA COAGULATION (APC) FIRST CLINICAL EXPERIENCES IN FLEXIBLE ENDOSCOPY, 2 End. Surg. 1994, 42-46 ("Grund *et al.* 1994 Article"); and
(iv)   Grund, "Argon Plasma Coagulation (APC): Ballyhoo or Breakthrough?," End. Surg. 1997, vol. 29, pp. 196-98 ("Grund 1997 Article").

the completion of the PTO's reexamination. *Id.* In the next few years, the arena for the litigation

shifted to the PTO. The PTO subsequently affirmed the patentability of the claims of the '675

patent, and this court lifted the stay on May 13, 2003. *Id.* at 7.

On August 2, 2004, after unsuccessful attempts at mediation and having faced an

avalanche of motions, the court set a revised briefing schedule, ordering the plaintiffs to file an

opposition to the defendants' original summary judgment motion, "addressing only the newly

discovered evidence and how that evidence affects the court's grant of summary judgment on the

defendants' non-infringement counterclaim." Minute Order (dated Aug. 2, 2004). The court

permitted the defendants to file a reply to the plaintiffs' opposition, "addressing only the matters

raised in their original summary judgment motion and the plaintiffs' opposition." *Id.* The parties

have now fully briefed the defendants' renewed motion for summary judgment.

But unfortunately, the battle does not end there. On September 28, 2004, the plaintiffs

filed a motion for leave to file a motion to strike two exhibits to the defendants' reply: the

declarations of Karl Grund and Jerome Waye. Again, the parties fully briefed the plaintiffs'

motion to file a motion to strike the Grund and Waye declarations. The court now addresses the

plaintiffs' motion to strike and the defendants' renewed motion for summary judgment in turn.

## III.  ANALYSIS

### A.  The Plaintiffs' Motion to Strike

#### 1.  Legal Standard for Motion to Strike Under Rule 56

The decision to grant or deny a motion to strike is vested in the trial judge's sound

discretion. *Collazos-Cruz v. United States*, 1997 WL 377037 at *2 (6th Cir. July 3, 1997) (citing

*Whitted v. Gen. Motors Corp.*, 58 F.3d 1200, 1203 (7th Cir. 1995); *see also Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994). A court may strike all improper portions of an affidavit used to support or oppose a motion for summary judgment. FED. R. CIV. P. 56(e). Under Federal Rule of Civil Procedure 56(e), when affidavits are used to support or oppose a summary judgment motion, they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Id.*; *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (stating that only statements in affidavits that are based on personal knowledge, rather than mere belief, will survive a motion to strike); *F.S. Bowen Elec. Co. v. J.D. Hedin Constr. Co.*, 316 F.2d 362, 364-5 (D.C. Cir. 1963) (holding that affiant must be competent to testify to the matters stated in the affidavit); *Jameson v. Jameson*, 176 F.2d. 58, 60 (D.C. Cir. 1949); *see also Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1579 (11th Cir. 1985) (stating that while the information contained in affidavits should be admissible at trial, the affidavits themselves need not be admissible).

In resolving motions to strike, however, the court uses "a scalpel, not a butcher knife." *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001). The court will allow all properly stated facts, while only striking the improper portions. *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999); *Lee v. Nat'l Life Assurance Co. of Canada*, 632 F.2d 524 (5th Cir. 1980). If a party does not move to strike an improper portion of an affidavit, their objection is deemed waived. *Humane Soc'y of United States v. Babbitt*, 46 F.3d 93, 96-97 (D.C. Cir. 1995). Moreover, the moving party bears a heavy burden as courts generally disfavor motions to strike. *See generally Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d

200, 201 (D.C. Cir. 1981) (citing 5C FED. PRAC. & PROC. 2d § 1380 at 783); *accord Morse v.*

*Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991); *Mirshak v. Joyce*, 652 F. Supp. 359, 370

(N.D. Ill. 1987); *Schramm v. Krischell*, 84 F.R.D. 294, 299 (D. Conn. 1979).

### 2.   The Court Denies the Plaintiffs' Motion to Strike the Grund Declaration and the Waye Declaration[3]

The plaintiffs argue that the court should strike the Grund and Waye declarations from

the record because: (1) the defendants failed to identify Grund and Waye as experts; (2) the

defendants did not identify Grund and Waye as having knowledge of the probes at issue; and (3)

the defendants did not identify Grund and Waye as potential witnesses in this case. *See generally*

Pls.' Mot. to Strike. The essence of the plaintiffs' concern is unfair surprise – that they have had

"no opportunity to address or challenge the purported testimony of Grund and Waye." Pls.'

Reply at 1. The plaintiffs also argue that the Grund and Waye declarations are not persuasive

and "do not provide support for granting Defendants' motion for summary judgment of non-

infringement." Pls.' Mot. to Strike at 2.

The defendants argue that the Grund and Waye declarations rebut the plaintiffs' claim

that the items of new evidence affect the court's earlier decision to grant summary judgment.

Defs.' Opp'n to Mot. to Strike at 2. The defendants further argue that their reliance on the

declarations is consistent with their earlier responses to interrogatories. *Id.*

---

[3]   As a prelude, Karl Grund is the author of three of the pieces of newly discovered evidence that the court considered in granting the plaintiffs relief from judgment on March 31, 2000. Grund wrote two of the articles, and co-invented the Farin *et al.* patent. Jerome Waye is the creator of an educational videotape, Argon Plasma Coagulator ("2003 video").

**a. The Court Denies the Plaintiffs' Motion to Strike the Waye Declaration as Moot**

In their opposition to the defendants' renewed summary judgment motion, the plaintiffs use still images from the 2003 video, created by Waye, in an attempt to demonstrate that the tube is moved relative to the endoscope during a tissue coagulation procedure. The defendants have introduced the Waye declarations ostensibly to rebut these arguments. Because this court concludes that the videotape is inadmissible as new evidence, *see infra*, Discussion III.B.1.b., the court denies as moot the plaintiffs' motion to strike the Waye declaration.

**b. The Court Denies the Plaintiffs' Motion to Strike the Grund Declaration**

The court begins its inquiry on the plaintiffs' motion to strike the Grund declaration by determining whether the Grund declaration can be properly admitted, under Rule 56(e), to support the defendants' motion for summary judgment. Grund is the author of two of the newly discovered articles and is one of the co-inventors of the Farin *et al*. patent. Def.'s Renewed Mot. for Summ. J. ("Defs.' Mot. SJ"), Ex. 12 at 5 (Grund Decl.). Grund has also performed endoscopic surgery more than four thousand times over the last twelve years using the Erbe APC probe, and has observed at least one thousand endoscopic surgical operations performed by other surgeons using the Erbe APC probe. *Id*. at 1, 4. In his declaration, Grund describes firsthand how the Erbe APC probe is used in surgery and the uses of the probe as described in the Farin *et al*. patent; his declaration is fraught with terms such as "in my experience as a surgeon" and "I have observed." *Id*. at 4. Thus, the court is convinced that Grund's declarations are made based on personal knowledge and he has shown affirmatively that he is competent to testify to the matters stated in his declaration. The court is also convinced that the information in the Grund declaration is relevant and probative to the court's analysis of whether the newly discovered

evidence affects the court's original grant of summary judgment of non-infringement.

The court is equally unconvinced by the plaintiffs' argument of undue "surprise" to support the motion to strike. The plaintiffs believe that they should be permitted to introduce newly discovered evidence, and then over four years later argue that declarations explaining that evidence should not be admitted because it has surprised them. It would be an assault on common sense, however, to allow a party to inject new evidence to revive a dead case, but to then prevent the opposing party from explaining what that new evidence means. The court mirrors a sentiment from Chief Justice John Marshall: this proposition "is too extravagant to be maintained." *Marbury v. Madison*, 5 U.S. 137, 179 (1803). Accordingly, the court denies the plaintiffs' motion to strike the Grund declaration.

## B.    Renewed Motion for Summary Judgment

### 1.    Newly Discovered Evidence

#### a.    Legal Standard for Admission of Newly Discovered Evidence

To introduce newly discovered evidence, a party must make a four-pronged showing: (1) the evidence was in existence at the time of trial; (2) the evidence was not and could not, by the exercise of due diligence, have been discovered in time to present it in the original proceeding; (3) the evidence is not merely cumulative or impeaching; and (4) the evidence is admissible and credible, and of such a material and controlling nature as will probably change the outcome. *Am. Cetacean Soc. v. Smart*, 673 F. Supp. 1102, 1106 (D.D.C. 1987); *In re Korean Air Lines Disaster of September 1, 1983*, 156 F.R.D. 18, 23 (D.D.C. 1984); *see also Philippine Nat'l Bank v. Kennedy*, 295 F.2d 544, 545 (D.C. Cir. 1961). In convincing the court to admit newly discovered

evidence, the parties bringing the action based on newly discovered evidence bear a heavy

burden to show that they have satisfied these requirements. *Johnson Waste Materials v.*

*Marshall*, 611 F.2d 593 (5th Cir. 1980). Furthermore, the court has a high level of discretion in

deciding whether or not to admit newly discovered evidence. *See United Mine Workers of Am. v.*

*Pittston Co.*, 984 F.2d 469, 476 (D.C. Cir. 1993).

### b. The Court Admits the Three Articles and the Farin *et al.* Patent as Newly Discovered Evidence but Holds the Educational Video Inadmissible

The newly discovered evidence that led to this stage of the litigation stems from the

plaintiffs' allegations that the defendants wrongfully withheld non-privileged documents that

were responsive to several interrogatories and requests for production of documents.

Specifically, the plaintiffs argue that the defendants failed to produce two documents: (1) an

"Office Action" that the PTO sent to the defendants in response to their application for a patent

on the APC probe; and (2) an Amendment that the defendants filed in response to the Office

Action. These documents led to the plaintiffs' discovery of two articles cited in the Office

Action, as well as a third article that the plaintiffs discovered by reading the two articles. As a

result, the court granted the plaintiffs' motion for relief from judgment on March 31, 2000,

holding that these articles constitute newly discovered evidence and that the information in these

articles might have helped the plaintiffs survive summary judgment for non-infringement. Mem.

Op. (dated Mar. 31, 2000) at 3.

Because this court has already held that the plaintiffs could introduce the articles and the

patent, *see generally* Mem. Op. (dated Mar. 31, 2000), the court need not revisit whether they are

admissible. The plaintiffs also attempt to introduce the "2003 Erbe educational video" as

additional newly discovered evidence. *See generally* Pls.' Opp'n. The plaintiffs claim that the video shows a use of the APC probe that supports their infringement claim and that the video should be admitted to help them withstand summary judgment. *Id.* Such a view, however, represents the triumph of hope over reality. Dated 2003, the video was not in existence at the time the court granted the defendants' summary judgment motion for non-infringement. Because the plaintiffs do not meet the first requirement for the admission of newly discovered evidence, the court need not consider the remaining three prongs. Accordingly, because the video is not newly discovered evidence, the court will not consider it in deciding the motions at hand.[4]

### 2.    Patent Infringement Claim

### a.    Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

---

[4]    The court instructed the parties that they should address "only the newly discovered evidence and whether that evidence affects the court's original grant of summary judgment on the defendants' non-infringement counterclaim." Mem. Op. (dated Mar. 31, 2000) at 16.

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere

existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion

for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make

a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to

the absence of evidence proffered by the nonmoving party, a moving party may succeed on

summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory

statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150,

154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable

a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477

U.S. at 249-50 (internal citations omitted).

### b. Legal Standard for Patent Infringement

"Determination of patent infringement requires a two-step analysis: (1) the scope of the

claims must be construed; and (2) the allegedly infringing device must be compared to the

construed claims." *Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1373 (Fed. Cir. 2004) (citing

*PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1576, 1582 (Fed. Cir. 1996)).

Claim construction is a question of law, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d

1576, 1582 (Fed. Cir. 1996), and begins "with the words of the claim itself[,]" *Mars, Inc.*, 377

F.3d at 1373. A patentee may act as his or her own lexicographer. *See In re Paulsen*, 30 F.3d

1475, 1480 (Fed. Cir. 1994). But "[i]n the absence of an express intent to impart a novel

meaning to the claim terms, the words of the claim are presumed to take on the ordinary and

customary meanings attributed to them by those of ordinary skill in the art." *Brookhill-Wilk 1,*

*LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003) (citation omitted). The

determination of the ordinary and customary meaning of a term may be evidenced by a multitude

of sources, including: the claims themselves, *id.* (citing *Process Control Corp. v. HydReclaim*

*Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999)); dictionaries and treatises, *id.* (citing *Tex. Digital*

*Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002)); and the written description,

the drawings, and the prosecution history, *id.* (citing *DeMarini Sports, Inc. v. Worth, Inc.*, 239

F.3d 1314, 1324 (Fed. Cir. 2001)).

To determine the proper meaning of patent claims, "the court should look first to the

intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in

evidence, the prosecution history." *Vitronics Corp.*, 90 F.3d at 1582 (citation omitted); *see also*

*Digital Biometrics, Inc. v, Identix, Inc.*, 149 F.3d 1335, 1343-44 (Fed. Cir. 1996); *C.R. Bard, Inc.*

*v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004) (stating that "[a] long line of cases

indicates that the intrinsic record is the primary source for determining claim meaning"). "When

an analysis of *intrinsic* evidence resolves any ambiguity in a disputed claim term, it is improper

to rely on extrinsic evidence to contradict the meaning so ascertained." *Intel Corp. v. VIA Techs.,*

*Inc.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003) (emphasis in original) (citing *Vitronics Corp.*, 90 F.3d

at 1583). If there is doubt regarding the meaning of the claim terms, however, "consideration of

extrinsic evidence may be necessary to determine the proper construction." *Vitronics*, 90 F.3d at 1583. If after examination of extrinsic evidence the claim remains ambiguous and susceptible to different meanings, the court will generally accept the narrower definition. *Id.* at 1582.

"The second step of the infringement analysis is comparing the properly construed claims with the allegedly infringing devices." *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1377 (Fed. Cir. 2003) (citing *Cybor v. Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1467 (Fed. Cir. 1998)). "Infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1318 (Fed. Cir. 2004) (citation omitted); *see also Nystrom v. Trex*, 374 F.3d 1105, 1110 (Fed. Cir. 2004). The patentee prevails on a claim of patent infringement if he establishes that "the accused device meets each claim limitation, either literally or under the doctrine of equivalents." *Deering Precision Instruments, L.L.C. v. Vector*, 347 F.3d 1314, 1324 (Fed. Cir. 2003). Literal infringement of a claim in a patent exists "when each of the claim limitations reads on, or in other words is found in, the accused device." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002) (internal quotation marks and citation omitted); *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) (stating that "[t]o establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system") (citation omitted). A device that does not literally infringe may, however, still infringe under the doctrine of equivalents if it (1) performs substantially the same function, (2) in substantially the same way, and (3) achieves substantially the same result as the allegedly infringed claim. *Graver Tank & MFG Co. Inc. v. Linde Air Prod. Co.*, 339 U.S. 605, 608 (1950); *Pennwalt Corp. v. Durand-Waylan*, 833 F.2d 931, 934-35 (Fed. Cir. 1987) (citing *Perkin-Elmer Corp. Computervision*

-13-

*Corp.*, 732 F.2d 888, 901-02 (Fed. Cir. 1984)).

Under the "all elements" rule, a patent claim is not infringed unless every element mentioned in the claim, or its equivalent, is combined in substantially the same way to produce a result of substantially the same nature. *Getty v. Kinzbach Tool Co.*, 119 F.2d 249, 250 (5th Cir. 1941); *Etten v. Kauffman*, 121 F.2d 137, 139-40 (3rd Cir. 1941). Thus, "[u]nder the 'all elements' rule, there can be no infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is not present in the accused device or method." *RF Delaware, Inc. v. Pac. Keystone Technologies, Inc.*, 326 F.3d 1255, 1265 (Fed. Cir. 2003) (citation omitted).

Finally, the burden of proof lies with the party alleging patent infringement to "present sufficient evidence to establish that one or more patent claims are infringed." *Jazz Photo Corp v. Int'l Trade Comm'n*, 264 F.3d 1094, 1102 (Fed. Cir. 2001); *Roberts Dairy Co. v. U.S.*, 530 F.2d 1342 (Fed. Cir. 1976) (stating that "[p]laintiffs have the burden of proving, by a preponderance of the evidence, that defendant has infringed their patents") (citation omitted); *see also Gen. Elec. Co. v. United States*, 572 F.2d 745, 783 n.17 (Cl. Ct. 1978).

### c.    The Court Grants the Defendants' Renewed Motion for Summary Judgment

The issue in dispute is whether the new evidence raises a genuine issue of material fact, whereby a reasonable juror could conclude that the plug of the Erbe APC probe is a handle for maneuvering the tube within endoscopes during tissue coagulation procedures. The plaintiffs argue that the newly discovered evidence shows that the plug satisfies the "handle for maneuvering" element, and undermines the defendants' claim that the plug cannot be used for

-14-

maneuvering the probe within the endoscope. Pls.' Opp'n at 4. Conversely, the defendants

argue that the newly discovered evidence has no effect on the court's original grant of summary

judgment for non-infringement. Defs.' Reply at 20.

The newly discovered evidence consists of the Farin *et al.* patent, the Grund *et al.* 1994

article, the Farin 1994 article, and the Grund 1997 article. *See supra*, Discussion III.B.1.b.

Because the plaintiffs do not rebut the defendants' allegations regarding the Farin 1994 article

and the Grund 1997 article, the court, in its discretion, interprets the plaintiffs' silence as

conceding those arguments. LCvR 7(b); *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294-95 (D.C.

Cir. 2004) (affirming the district court reliance on the absence of a response as a basis for treating

the motion as conceded). Accordingly, the relevant evidence for the instant motion is the Farin *et

al.* patent and the Grund *et al.* 1994 article.

First, the Farin *et al.* patent. The plaintiffs urge that the Farin *et al.* patent demonstrates

that the APC probe contains a handle for maneuvering the tube within an endoscope. The

plaintiffs point to the statement that "the surgeon can grip a proximal end region of the tube in

order to move the tube in the direction into or out of the endoscope." Pls.' Opp'n at 18. Because

the plug of the Erbe APC probe is located on the proximal end region of the tube, the plaintiffs

claim that the "logical conclusion" is that one "can grip the handle of the Erbe APC probe in

order to move the tube in or out of the endoscope." *Id.* The plaintiffs support this contention

with a still image taken from the 2003 Erbe video, which as previously indicated, the court holds

inadmissible.

The defendants, on the other hand, claim that the Farin *et al.* patent shows that the Erbe

-15-

APC probe does not contain a handle for maneuvering the tube within an endoscope, and thus that the Farin *et al.* patent has no effect on the court's prior granting of summary judgment. Defs.' Reply at 9.  They urge that the statement in the Farin *et al.* patent that "the surgeon can grip a proximal end region of the tube in order to move the tube in the direction into or out of the endoscope" simply "describes an initial positioning of the APC probe in an endoscope," but not that the probe or its tube is ever moved relative to the endoscope during a tissue coagulation procedure, or that the tube is ever moved by the plug.  Defs.' Reply at 9.  The defendants further argue that the plaintiffs failed to see the distinction between the statement "that the tube is gripped to insert the tube and place the tube in a fixed position" and "that the plug is gripped to maneuver the tube during tissue coagulation."  *Id.*  Thus, the defendants argue that this piece of newly discovered evidence is consistent with the defendants' claim that the accused probes do not contain a "handle attached to said tube . . . for maneuvering said tube within said endoscope." *Id.*

The other piece of newly discovered evidence is the Grund *et al.* 1994 Article.  That article states, in relevant part,

> [a]s with the laser, APC is applied mostly in a "backward" direction during withdrawal of the unit.  Anterior application during advancement of the endoscope is certainly possible in stents, since these do not collapse, but the operator's view is considerably impeded in the case of tumor stenoses or bleeding tumors.

Defs.' Reply, Ex. 8 at 44.

The plaintiffs focus on one sentence to support the argument that the defendant's probe has a handle to maneuver the tube within the endoscope: "[a]s with the laser, APC is applied mostly in a 'backward' direction during withdrawal of the unit."  Pls.' Opp'n at 15.  The

-16-

plaintiffs claim that the article describes "backward movement of the probe using the Erbe handle." *Id.* The plaintiffs urge that because this movement is demonstrated in the Erbe video, a jury "could reach no conclusion other than that the handle of Erbe's flexible APC probe is capable of being used to maneuver the tube within the endoscope." Pls.' Opp'n at 16. As already noted, the court will not consider the plaintiffs' arguments relying on the 2003 video.

Conversely, the defendants argue that because the article does not refer to a handle for maneuvering a tube within an endoscope, the article does not disrupt the court's original grant of summary judgment for non-infringement. The defendants claim that the word "unit" in the quotation refers to the entire endoscope, rather than simply the tube. Defs.' Reply at 9. The defendants argue that because the word "unit" refers to the entire endoscope with the APC probe installed in a fixed position, the article "does not describe or suggest that the Erbe APC probe, or its tube, is ever moved relative to the endoscope during a tissue coagulation procedure," or that the "flexible tube of the APC probe is ever moved by moving the plug attached to the tube proximal end." *Id.* at 10.

The defendants submit Grund's declaration to support this contention. Grund states that: "the word 'unit' . . . refers to the *endoscope* 'unit,' with the APC probe installed in a fixed position therein, being moved in a backward direction during tissue coagulation." Grund Decl. at 19. The next sentence in the quotation refers to movement of the endoscope unit in the forward direction. *Id.* As a result, the defendants argue that the article does not suggest that the tube is ever moved relative to the endoscope, and therefore has no effect on the court's earlier granting of summary judgment.

-17-

This court has already interpreted the term "handle" to include a limiting function of "maneuvering" a tube within an endoscope. *Canady*, 20 F. Supp. 2d at 65. The plaintiffs claim that the "maneuvering" capability is demonstrated through the newly discovered evidence. While the plaintiffs argued earlier that the handle should be interpreted broadly to include any "handle" element positioned outside an endoscope, the court rejected this contention years ago. Mem. Op. (dated Mar. 31, 2000) at 8.

This court has held that the plaintiffs need not prove that surgeons using the APC probe "would have to" or "actually do" use the plug to maneuver the tube within the endoscope. Mem. Op. (dated Mar. 31, 2000) at 15-16. The plaintiffs need only prove that "the plug *could* be used to maneuver the tube within the endoscope." Id. at 16. The defendants contend that to prove infringement, the plaintiffs must show that the APC probe is "reasonably capable of satisfying the claim limitations." Defs.' Reply at 7 (citing *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001)). The defendants claim that the plug "is not, and cannot, be used to maneuver the tube within the endoscope during a tissue coagulation procedure." Defs.' Reply at 7. Because of the tube's length and flexible nature, the defendants argue that the plug cannot be used to push the tube within the endoscope. Defs.' Mot. SJ at 23. In support of this argument, the defendants provide the declaration of Grund, who states, *inter alia*, that: (1) he has observed at least one thousand endoscopic procedures by surgeons using the APC probe; (2) in his experience using the Erbe APC, which includes performing endoscopic surgery four thousand times using the Erbe APC probe, "the plug is never used" to maneuver the tube within the endoscope; and (3) the Erbe APC probe does not include a handle for maneuvering the tube within the endoscope, and that it would be a "dangerous, improper surgical technique that would

-18-

never be performed by a competent endoscopic surgeon." Grund Decl. at 1, 4.

In attempting to show that the plug "could" be used to maneuver the tube, the plaintiffs

claim that capability is demonstrated in the Farin *et al.* patent, the Grund *et al.* 1994 article, and

the 2003 Erbe video. The plaintiffs argue that the video shows that the tube "is moved" within

the endoscope during procedures. Pls.' Opp'n at 13-14. Citing to still images taken from the

video, the plaintiffs argue that from frame to frame, the length of visible tube changes,

demonstrating that the tube is being moved relative to the endoscope. *Id.* at 14.

The court is unconvinced. First of all, the plaintiffs rely on the 2003 video throughout

their opposition. This court's orders of March 5, 2004, and August 2, 2004, however, directed

the plaintiffs not to discuss this type of inadmissible evidence in their opposition. Indeed, a fatal

flaw with the plaintiffs' approach is their disregard of the court's admonition that only newly

discovered evidence would be considered.

Moreover, the plaintiffs' allegations are otherwise unsupported. The plaintiffs have

offered an interpretation of the newly discovered evidence that they believe raises an issue of

material fact. The defendants, however, successfully rebutted the plaintiffs' interpretations.

Where the plaintiffs offer a few still images from an inadmissible video to show capability, the

defendants offer Grund's experience of performing and observing over five thousand procedures.

This court finds Grund's declarations overwhelmingly persuasive; any value that the newly

discovered evidence could hold for the plaintiffs was eviscerated by Grund. "Summary judgment

on the issue of literal infringement is proper when no genuine issue of material fact exists, in

particular, when no reasonable jury could find that every limitation recited in the properly

-19-

construed claim either is or is not found in the accused device." *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1163 (Fed. Cir. 2004) (internal quotation marks and citation omitted). Thus, the party opposing the motion for summary judgment of non-infringement "must point to an evidentiary conflict created on the record . . . [m]ere denials or conclusory statements are insufficient." *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) (citations omitted). This court concludes that no reasonable jury could find that the plug of the APC probe is used as a handle for maneuvering the tube within an endoscope during a tissue coagulation procedure.

The court notes at this point that it is unusual to upset an earlier judgment, and doing so is not a remedy courts take lightly. *See Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir. 1970) (discussing the "sanctity of final judgments"). In the court's 2000 memorandum opinion granting the plaintiffs relief, it expressed no opinion as to whether the new evidence would help the plaintiffs withstand summary judgment.[5] Mem. Op. (dated Mar. 31, 2000) at 16. Rather, the court stated that the new evidence *might* help them survive a summary judgment motion. *Id.* Since then, however, the plaintiffs have been unable to use this evidence to their benefit. In considering the Farin *et al.* patent, the Grund 1994 article, and Grund's declaration, the court holds that the properly admitted newly discovered evidence would not have changed the court's decision to grant summary judgment of non-infringement. In other words, the court concludes that the plug is not a handle for maneuvering the tube within an endoscope. Accordingly, the court grants the defendants' renewed motion for summary judgment.

---

[5]    The court's precise language was that it "cannot say that the new evidence would not have changed this court's decision to grant summary judgment of noninfringement." Mem. Op. (dated at Mar. 31, 2000) at 16.

## IV. CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motion to strike and grants the

defendants' renewed motion for summary judgment.  An order consistent with this Memorandum

Opinion is separately and contemporaneously issued this 29th day of July 2005.

RICARDO M. URBINA
United States District Judge

-21-